UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GEORGE LEE LACY JR.,

        Plaintiff,                Case No. 1:14-cv-537

v.                                       Honorable Janet T. Neff

RANDY DUELL et al.,

        Defendants.
_____/

## AMENDED OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and the "Privacy Act" (presumably, 5 U.S.C. § 552a). The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Breedlove, Galvan-Casas, Goodsen, Pleasant, Prelesnik, Stoddard and Huss. The Court will serve the complaint against Defendants Duell, Arksey, Oversmith and Norwood.[1]

---

[1] The instant opinion replaces and supercedes the Court's July 30, 2014 opinion, which inadvertently omitted Defendant Pleasant's name from the list of dismissed Defendants. The Court issues this amended opinion solely to correct that error.

**Discussion**

    I.        Factual allegations

Plaintiff George Lee Lacy, Jr.[2] is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF), though the events giving rise to his complaint occurred while he was incarcerated at the Ionia Correctional Facility (ICF). Defendants are employees of the MDOC and/or Michigan State Industries (MSI), a bureau of the MDOC: MSI Regional Superintendent Randy Duell; MSI Plant Manager Deanna Arksey; MSI Plant Supervisors Crystal Galvan-Casas and Janice Pleasant; ICF Deputy Wardens Nanette Norwood and Erica Huss; ICF Facility Inspector Betty Goodsen; ICF Grievance Coordinator M. Breedlove; ICF Warden John Prelesnik; ICF Acting Warden Cathy Stoddard; and ICF employee Brooke A. Oversmith.

According to the complaint and affidavit in support, Plaintiff was hired to work for MSI in 2010, while he was incarcerated at ICF. In June 2011, he began to experience "problems" with Defendants Duell, Arksey, and Galvan-Casas. (Compl., docket #1, Page ID#3.) One day that month, Plaintiff left work due to a "severe" migraine headache caused by "stressful demeaning conditions" at his work. (Pl.'s Aff., docket #1-1, Page ID#12.) He was then laid off work for two weeks by Defendants Duell, Arksey, and Galvan-Casas, without explanation. After that time, his supervisors would "single him out," along with other black workers, and demean him on a daily basis. (Compl., docket #1, Page ID#7.) Galvan-Casas would taunt Plaintiff, saying that Plaintiff's hands were too big for him to sew effectively, and that Plaintiff was too big and old to be an efficient worker. Also, though other prisoners were given whatever jobs they requested, Plaintiff was forced

---

[2]Plaintiff refers to himself as "George Lacy El/Jr" in the complaint. (*See* Compl. 1, docket #1, Page ID#1.) The Court will refer to Plaintiff as he is identified in the MDOC's Offender Tracking Information System. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=141241 (accessed July 15, 2014).

to work "undesirable, non promotional jobs." (*Id.*) Defendants Arksey and Galvan-Casas allegedly told Plaintiff that he was needed on the "T-Shirt line," and they were not interested in moving him. (Pl.'s Aff, Page ID#13.)

Defendant Pleasant was aware of the conduct by Galvan-Casas, and told Plaintiff to "stay clear" of Galvan-Casas. (*Id.*) Pleasant also warned Plaintiff that if he filed a grievance, Duell and Arksey "were going to have the Deputy Warden and Classification Director transferred." (*Id.*) Pleasant attempted to assist Plaintiff, and gave him permission to speak with Defendant Arksey about his problems with Galvan-Casas.

Plaintiff spoke with Defendant Arksey on March 27, 2012, about "harassment" by his supervisor and about being discriminated against in regard to consideration for higher-paying positions. (Compl., Page ID#4.) Arksey promised to schedule a meeting to resolve the issues raised by Plaintiff, but she never did. Plaintiff filed a grievance about this on March 30, 2012.[3] He also wrote Inspector Goodsen a letter, requesting to speak with her about his issues with MSI. She never responded. The next day, Plaintiff discussed his issues with Defendant Duell, who promised to speak with the other supervisors about them.

On April 3, 2012, Duell told Plaintiff that he needed more time to sort out the issues raised in their discussion. Plaintiff informed Duell that he had already filed a grievance regarding those issues. Duell then became upset, telling Plaintiff, "you've made a mistake by filing a grievance, there are some places for prisoners like you, who don't handle problems in house." (*Id.* at Page ID#4.) Duell told Plaintiff that the "polar bears" will be delivering Plaintiff mail, and that

---

[3] The grievance was rejected at Steps I, II, and III of the grievance process. Defendant Arksey rejected it at Step I and Warden Prelesnik rejected it at Step II.

-3-

Duell could not have prisoner employees writing grievances on his staff. (Pl.'s Aff., docket #1-1, Page ID#12.) Arksey also "criticized" Plaintiff for filing his grievance. (*Id.* at Page ID#15.)

The following day, Grievance Coordinator Breedlove received Plaintiff's grievance, Defendant Oversmith prepared a security classification screen to transfer Plaintiff to URF, and Deputy Warden Norwood approved the transfer. Plaintiff was then transferred to URF on April 10, 2012. As a result of the transfer, Plaintiff lost his "high paying job" and was moved several hundred miles further away from his family, preventing them from visiting him. (Compl., Page ID#8; Pl.'s Aff., Page ID#15.) Also, when Plaintiff received his personal property the day after his transfer, two of his footlockers were destroyed and his legal paperwork was missing.

On April 19, 2012, Plaintiff filed a grievance claiming that he had been transferred in retaliation for filing a grievance against MSI staff. Defendant Breedlove "arbitrarily" rejected the grievance, and Defendants Huss and Stoddard approved the rejection at Steps I and II of the grievance process. (Compl., Page ID#5; Pl.'s Aff, Page ID#14). Plaintiff appealed the denial of his grievance, and his appeal was rejected by Warden Stoddard. During the grievance investigation, MSI staff (including Duell and Arksey) justified the transfer by stating, falsely, that Plaintiff quit his job and would not report to work on assigned days. (Compl., Page ID#7; Pl.'s Aff, Page ID#14.)

In May 2012, Plaintiff wrote a letter to the ICF Classification Director, asking for an updated work evaluation. He never received a response, so he filed a grievance about the issue in June 2012. The grievance was rejected by Breedlove as untimely. Plaintiff's appeals from Breedlove's decision were denied.

Plaintiff also wrote letters to Inspector Goodsen seeking her assistance, but she did not respond. Plaintiff filed a grievance about Goodsen on June 7, 2012. It was rejected by

Defendant Breedlove on June 15. Plaintiff also filed a grievance regarding the destruction of his personal property. It was denied at all steps of the grievance process.

Based on the foregoing, Plaintiff claims that (1) he was transferred to another prison in retaliation for his protected conduct, (2) MSI supervisors harassed and discriminated against him in violation of the Equal Protection Clause; (3) the rejection of his grievances prevented him exercising his right to seek redress of grievances; and (4) the denial of his grievances violated his rights under the Privacy Act. As relief, Plaintiff seeks compensatory and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific federal right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Privacy Act

Plaintiff claims that Defendants violated the "Privacy Act," which the Court construes as a reference to 5 U.S.C. § 552a. That statute, however, "applies exclusively to federal agencies." *Schmitt v. City of Detroit*, 395 F.3d 327, 331 (6th Cir. 2005). It does not apply to Defendants, who are employees of a state agency. Thus, Plaintiff does not state a claim under the Privacy Act.

### B. Equal Protection

Plaintiff claims that his work supervisors singled him out and discriminated against him by verbally harassing him and forcing him to work in undesirable jobs. Plaintiff alleges that other prisoners were assigned whatever jobs they requested. (Compl., Page ID#7.) The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Plaintiff implies that he was treated differently because he is black, but his allegations are wholly conclusory. Plaintiff fails to allege any facts to support a claim of intentional race discrimination by either direct or indirect evidence.

*See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). He alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). Moreover, he fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that any other prisoner treated differently was similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Id.* at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Plaintiff provides no specific factual allegations to support his contention of discriminatory conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, to the extent Plaintiff asserts that he was singled out for mistreatment and was forced to stay in his job for reasons other than membership in an identifiable group, his claim fails for an additional reason. The Supreme Court has recognized that the kind of scrutiny used for class-of-one equal protection claims is not properly applied to employment decisions and other forms of discretionary decision making:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008). MSI officials presumably have wide discretion to determine which prisoners should be assigned to a particular job, based on a "vast array of subjective, individualized assessments." *See id.* In that case, Plaintiff's claim that he was singled out for mistreatment in relation to his job cannot stand. For all the foregoing reasons, Plaintiff does not state an equal protection claim.

### C. Defendant Galvan-Casas

#### 1. Verbal harassment

Defendant Galvan-Casas, one of Plaintiff's work supervisors, allegedly harassed Plaintiff by taunting him and making demeaning statements. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is

insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state claim against Defendant Galvan-Casas arising from his alleged verbal abuse.

### 2. Prison job

Plaintiff asserts that he was laid off from his prison job for two weeks by Galvan-Casas and other Defendants, without explanation. He also contends he was prevented from moving to other, more desirable jobs. He implies that Defendants Arksey and Galvan-Casas were responsible for keeping him in his position on the t-shirt line, because they told him that he was needed at that position and they did not want to move him.

The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job."); *Carter v. Tucker*, No. 03–5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Because Plaintiff did not have a right to work in any prison job, let alone the job of his choosing, Defendants did not deprive him of any protected rights when they laid him off for two weeks and prevented him from moving to another job. Consequently, Plaintiff does not state a § 1983 claim against Defendant Galvan-Casas.

### D. Supervisory Liability / Failure to Act

Plaintiff alleges that certain Defendants failed to act in response to Plaintiff's complaints or denied Plaintiff's grievances about other prison officials. For instance, Inspector Goodsen did not respond to Plaintiff's request for assistance. Also, Warden Prelesnik, Acting Warden Stoddard and Deputy Warden Huss denied Plaintiff's grievances at various stages of the grievance process. The foregoing allegations do not state a claim under § 1983, because a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Goodsen, Prelesnik, Stoddard or Huss engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

**E. Grievance Process**

Grievance Coordinator Breedlove allegedly rejected several of Plaintiff's grievances for improper reasons, and Defendants Duell and Arksey made false statements in response to Plaintiff's grievances. Plaintiff apparently claims that Defendants intentionally deprived him of the

ability to pursue redress through the grievance process. The Sixth Circuit has indicated that the filing of grievances is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee*, 199 F.3d at 300-301. However, there is no inherent constitutional right to an effective prison grievance procedure. *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Moreover, Michigan law does not create an interest in the grievance process. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan*, 23 F. App'x at 407; *Wynn*, 1994 WL 105907, at *1. Thus, Defendants' conduct in connection with that process did not deprive him of any constitutional rights.

In any event, it is clear that Plaintiff was not deprived of the opportunity to seek redress through the grievance process. He merely disagreed with the result. Even when his grievances were rejected, he was able to appeal that decision. *See* MDOC Policy Directive 03.02.130 ¶ I (effective July 9, 2007) ("A grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy."). Thus, the rejection of his grievances did not deprive him of the ability to seek redress through the grievance process.

Plaintiff implies that Defendant Breedlove's actions violated prison policy, but a failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of

federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Consequently, Plaintiff does not state a claim against Defendant Breedlove.

### F. Defendant Pleasant

Plaintiff asserts that one of his supervisors, Defendant Pleasant, was aware of the conduct by Galvan-Casas, but apparently she did nothing more than tell Plaintiff to stay away from Galvan-Casas. She also warned Plaintiff that filing a grievance would result in Arksey and Galvan-Casas attempting to have the Classification Director and Deputy Warden transfer Plaintiff to another facility. Plaintiff does not allege that Pleasant engaged in any unconstitutional conduct, however. Plaintiff also asserts that unidentified supervisors would single him out for abuse and unequal treatment relative to other prisoners, and prevented him from obtaining a more desirable position, but he does not specifically allege that Defendant Pleasant took part in such conduct. To the contrary, he contends that Pleasant "did everything in her power to promote and assist [Plaintiff]." (Pl.'s Aff., docket #1-1, Page ID#13.) Plaintiff apparently sues her because she was "responsible for the supervision, safety, welfare, and equal treatment of all inmates working under her supervision." (Compl., Page ID#2.) However, as the Court indicated with respect to Defendants Goodsen, Prelesnik, Stoddard and Huss, Defendant Pleasant is not liable for the conduct of others, and she cannot be held liable under § 1983 merely because she failed to act in response to the conduct of her co-workers. In short, Plaintiff has not alleged any active unconstitutional conduct by Defendant Pleasant; thus, he fails to state a claim against her.

### G. Defendants Duell, Arksey, Oversmith & Norwood

At this stage of the proceedings, the Court concludes that Plaintiff states a claim against Defendants Duell, Arksey, Oversmith and Norwood, who were allegedly involved in transferring Plaintiff to another facility after he filed a grievance complaining about mistreatment

by MSI staff.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff does not state an equal protection claim, a claim under the Privacy Act, or any claim against Defendants Breedlove, Galvan-Casas, Goodsen, Pleasant, Prelesnik, Stoddard and Huss. Thus, the latter Defendants will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Duell, Arksey, Oversmith and Norwood.

An Amended Order consistent with this Amended Opinion will be entered.


Dated: August 20, 2014              /s/ Janet T. Neff
                                    Janet T. Neff
                                    United States District Judge