UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE LACY, JR.,

        Plaintiff,                                Hon. Janet T. Neff

v.                                                Case No. 1:14-cv-537

RANDY DUELL, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment, (Dkt. #14), and Plaintiff's Motion for Summary Judgment, (Dkt. #18). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied** and Defendants' motion be **granted in part and denied in part**.

**BACKGROUND**

Plaintiff George Lee Lacy, Jr. is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF), though the events giving rise to his complaint occurred while he was incarcerated at the Ionia Correctional Facility (ICF). Defendants are employees of the MDOC and/or Michigan State Industries (MSI), a bureau of the MDOC: MSI Regional Superintendent Randy Duell; MSI Plant Manager Deanna Arksey; MSI Plant Supervisors Crystal Galvan-Casas and Janice Pleasant; ICF Deputy Wardens Nanette Norwood and Erica Huss; ICF Facility Inspector Betty Goodsen; ICF Grievance Coordinator M. Breedlove; ICF Warden

John Prelesnik; ICF Acting Warden Cathy Stoddard; and ICF employee Brooke A. Oversmith. The following allegations are contained in Plaintiff's complaint.

Plaintiff was hired to work for MSI in 2010, while he was incarcerated at ICF. In June 2011, he began to experience "problems" with Defendants Duell, Arksey, and Galvan-Casas. One day that month, Plaintiff left work due to a "severe" migraine headache caused by "stressful demeaning [work] conditions." He was then laid off work for two weeks by Defendants Duell, Arksey, and Galvan-Casas, without explanation. After that time, Plaintiff's supervisors would "single him out," along with other black workers, and demean him on a daily basis. Galvan-Casas would taunt Plaintiff, saying that Plaintiff's hands were too big for him to sew effectively, and that Plaintiff was too big and old to be an efficient worker. Also, though other prisoners were given whatever jobs they requested, Plaintiff was forced to work "undesirable, non promotional jobs."

Defendant Pleasant was aware of the conduct by Galvan-Casas, and told Plaintiff to "stay clear" of Galvan-Casas. Pleasant also warned Plaintiff that if he filed a grievance, Duell and Arksey "were going to have the Deputy Warden and Classification Director transferred." In an attempt to assist Plaintiff, Pleasant gave Plaintiff permission to speak with Defendant Arksey about his problems with Galvan-Casas.

Plaintiff spoke with Defendant Arksey on March 27, 2012, about "harassment" by his supervisor and about being discriminated against in regard to consideration for higher-paying positions. Arksey promised to schedule a meeting to resolve the issues raised by Plaintiff, but she never did. Plaintiff filed a grievance about this on March 30, 2012. He also wrote Inspector Goodsen a letter, requesting to speak with her about his work-related issues. She never responded. The next day, Plaintiff discussed his issues with Defendant Duell, who promised to speak with the other supervisors.

On April 3, 2012, Duell told Plaintiff that he needed more time to sort out the issues raised in their discussion. Plaintiff informed Duell that he had already filed a grievance regarding those issues. Duell then became upset, telling Plaintiff, "you've made a mistake by filing a grievance, there are some places for prisoners like you, who don't handle problems in house." Duell told Plaintiff that the "polar bears" would be delivering his mail, and that Duell could not have prisoner employees writing grievances on his staff. Arksey also "criticized" Plaintiff for filing his grievance.

The following day, Defendant Oversmith prepared a security classification screen to transfer Plaintiff to the Chippewa Correctional Facility (URF), and Deputy Warden Norwood approved the transfer. Plaintiff was then transferred to URF on April 10, 2012. As a result of the transfer, Plaintiff lost his "high paying job" and was moved several hundred miles further away from his family, preventing them from visiting him. Also, when Plaintiff received his personal property the day after his transfer, two of his footlockers were destroyed and his legal paperwork was missing.

On April 19, 2012, Plaintiff filed a grievance claiming that he had been transferred in retaliation for filing a grievance against MSI staff. Defendant Breedlove "arbitrarily" rejected the grievance, and Defendants Huss and Stoddard approved the rejection at Steps I and II of the grievance process. Plaintiff appealed the denial of his grievance, and his appeal was rejected by Warden Stoddard. During the grievance investigation, MSI staff (including Duell and Arksey) justified the transfer by falsely stating that Plaintiff quit his job and would not report to work on assigned days.

In May 2012, Plaintiff wrote a letter to the ICF Classification Director, asking for an updated work evaluation. He never received a response, so he filed a grievance about the issue in June 2012. The grievance was rejected as untimely. Plaintiff's appeals of this decision were denied. Plaintiff also wrote letters to Inspector Goodsen seeking her assistance, but she did not respond. Plaintiff filed

a grievance about Goodsen on June 7, 2012. It was rejected by Defendant Breedlove on June 15. Plaintiff also filed a grievance regarding the destruction of his personal property. It was denied at all steps of the grievance process.

Plaintiff alleged that (1) he was transferred to another prison in retaliation for his protected conduct, (2) MSI supervisors harassed and discriminated against him in violation of the Equal Protection Clause; (3) the rejection of his grievances prevented him exercising his right to seek redress of grievances; and (4) the denial of his grievances violated his rights under the Privacy Act. The majority of Plaintiff's claims were dismissed on screening by the Honorable Janet T. Neff. (Dkt. #6-7). The only claims remaining at this juncture are Plaintiff's claims that Defendants Duell, Arksey, Oversmith, and Norwood unlawfully retaliated against him by transferring him to another facility to punish him for filing a prison grievance. Defendants Duell, Arksey, Oversmith, and Norwood now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff likewise moves for summary judgment on the ground that there does not exist any factual dispute that Defendants subjected him to unlawful retaliation.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.         Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the

following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendants move to dismiss Plaintiff's remaining claims on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Specifically, Defendants assert two arguments. First, Defendants Arksey, Oversmith, and Norwood argue that because they were not identified in the relevant grievance such cannot serve to exhaust Plaintiff's claims against them. Defendants also argue that Plaintiff "has not properly exhausted since he did not follow the procedures of the [grievance] policy by filing a Step III grievance appeal prior to filing this lawsuit."

Defendants have submitted evidence concerning numerous grievances which Plaintiff has filed. (Dkt. #15 at Page ID# 119-79). This evidence reveals that Plaintiff did, in fact, file a grievance in which he alleged that he was transferred to the Chippewa Correctional Facility in retaliation for having filed a prison grievance concerning difficulties he was allegedly experiencing in his prison job.

(Dkt. #15 at Page ID# 155-65). However, Defendant Duell was the only defendant identified in this grievance. (Dkt. #15 at Page ID# 158, 164). The conclusion that this grievance was asserted only against Defendant Duell is further supported by the Step II grievance response which indicates that Defendant Duell was the only individual interviewed concerning Plaintiff's grievance. (Dkt. #15 at Page ID# 157).

Plaintiff pursued this grievance through all three steps of the prison grievance process. Thus, this grievance serves to exhaust Plaintiff's retaliatory transfer claim against Defendant Duell. However, because Defendants Arksey, Oversmith, and Norwood were not identified in Plaintiff's Step I grievance, such cannot serve to exhaust Plaintiff's retaliatory transfer claims asserted against them. Moreover, Plaintiff has not submitted any evidence that he filed any other grievance concerning his allegations of retaliatory transfer. Accordingly, the undersigned recommends that Defendants Arksey, Oversmith, and Norwood are entitled to summary judgment.

As for Defendants' argument that Plaintiff initiated the present action prior to completing the administrative grievance process, the Court is not persuaded. Plaintiff filed the aforementioned grievance on April 19, 2012, and received a Step III response thereto on October 12, 2012. (Dkt. #15 at Page ID# 155-65). Plaintiff did not initiate the present lawsuit until May 16, 2014, more than nineteen months later. (Dkt. #1). Thus, Defendants' argument that Plaintiff failed to pursue this grievance through all three steps of the grievance process prior to initiating this lawsuit is rejected.

In sum, for the reasons articulated immediately above, the undersigned recommends that Defendants Arksey, Oversmith, and Norwood are entitled to summary judgment, but that Defendant Duell's motion for summary judgment be denied.

**II.         Plaintiff's Motion for Summary Judgment**

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff is seeking summary judgment as to his retaliatory transfer claim, a claim on which he bears the burden at trial. As previously noted, to obtain relief on such a claim Plaintiff must present evidence "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." On the other hand, Plaintiff is not entitled to summary judgment if "the evidence is susceptible of different interpretations or inferences by the trier of fact."

First, Plaintiff's motion fails as to Defendants Arksey, Oversmith, and Norwood because Plaintiff's claims against these defendants have not been properly exhausted. As for Plaintiff's claim against Defendant Duell, the evidence falls well short of the relevant standard. While Plaintiff asserts the conclusion that Duell subjected him to unlawful retaliation, Plaintiff has not presented evidence establishing that such is the case. Moreover, Plaintiff has submitted evidence suggesting that Defendant Duell had no involvement at all in the decision to transfer him. In an affidavit, Plaintiff asserts that his transfer was accomplished by Defendants Oversmith and Norwood. (Dkt, #20). Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #14), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims against Defendants Arksey, Oversmith, and Norwood be dismissed for failure to exhaust administrative remedies. The undersigned also recommends, however, that Defendant Duell's motion for summary judgment on exhaustion grounds be denied. The undersigned further recommends that Plaintiff's Motion for Summary Judgment, (Dkt. #18), be **denied**. Finally, the undersigned recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: August 28, 2015                /s/ Ellen S. Carmody
                                     ELLEN S. CARMODY
                                     United States Magistrate Judge