UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE LACY, JR.,

       Plaintiff,                                   Hon. Janet T. Neff

v.                                                     Case No. 1:14-cv-537

RANDY DUELL, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 64). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter terminated.

## BACKGROUND

Plaintiff George Lee Lacy, Jr. is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF), though the events giving rise to his complaint occurred while he was incarcerated at the Ionia Correctional Facility (ICF). Defendants are employees of the MDOC and/or Michigan State Industries (MSI), a bureau of the MDOC: MSI Regional Superintendent Randy Duell; MSI Plant Manager Deanna Arksey; MSI Plant Supervisors Crystal Galvan-Casas and Janice Pleasant; ICF Deputy Wardens Nanette Norwood and Erica Huss; ICF Facility Inspector Betty Goodsen; ICF Grievance Coordinator M. Breedlove; ICF Warden John Prelesnik; ICF Acting Warden Cathy Stoddard; and ICF employee Brooke A. Oversmith. The following allegations are contained in Plaintiff's complaint.

Plaintiff was hired to work for MSI in 2010, while he was incarcerated at ICF. In June 2011, he began to experience "problems" with Defendants Duell, Arksey, and Galvan-Casas. One day that month, Plaintiff left work due to a "severe" migraine headache caused by "stressful demeaning [work] conditions." He was then laid off work for two weeks by Defendants Duell, Arksey, and Galvan-Casas, without explanation. After that time, Plaintiff's supervisors would "single him out," along with other black workers, and demean him on a daily basis. Galvan-Casas would taunt Plaintiff, saying that his hands were too big for him to sew effectively, and that Plaintiff was too big and old to be an efficient worker. Also, though other prisoners were given whatever jobs they requested, Plaintiff was forced to work "undesirable, non promotional jobs."

Defendant Pleasant was aware of the conduct by Galvan-Casas, and told Plaintiff to "stay clear" of Galvan-Casas. In an attempt to assist Plaintiff, Pleasant gave Plaintiff permission to speak with Defendant Arksey about his problems with Galvan-Casas. Plaintiff spoke with Defendant Arksey on March 27, 2012, about "harassment" by his supervisor and about being discriminated against in regard to consideration for higher-paying positions. Arksey promised to schedule a meeting to resolve the issues raised by Plaintiff, but she never did. Plaintiff filed a grievance about this on March 30, 2012. He also wrote Inspector Goodsen a letter, requesting to speak with her about his work-related issues. She never responded. The next day, Plaintiff discussed his issues with Defendant Duell, who promised to speak with the other supervisors.

On April 3, 2012, Duell told Plaintiff that he needed more time to sort out the issues raised in their discussion. Plaintiff informed Duell that he had already filed a grievance regarding those issues. Duell then became upset, telling Plaintiff, "you've made a mistake by filing a grievance, there are some places for prisoners like you, who don't handle problems in house." Duell told Plaintiff that

the "polar bears" would be delivering his mail, and that Duell could not have prisoner employees writing grievances on his staff. Arksey also "criticized" Plaintiff for filing his grievance.

The following day, Defendant Oversmith prepared a security classification screen to transfer Plaintiff to the Chippewa Correctional Facility (URF), and Deputy Warden Norwood approved the transfer. Plaintiff was transferred to URF on April 10, 2012. As a result of the transfer, Plaintiff lost his "high paying job" and was moved several hundred miles away from his family. Also, when Plaintiff received his personal property the day after his transfer, two of his footlockers were destroyed and his legal paperwork was missing.

On April 19, 2012, Plaintiff filed a grievance claiming that he had been transferred in retaliation for filing a grievance against MSI staff. Defendant Breedlove "arbitrarily" rejected the grievance, and Defendants Huss and Stoddard approved the rejection at Steps I and II of the grievance process. Plaintiff appealed the denial of his grievance, and his appeal was rejected by Warden Stoddard. During the grievance investigation, MSI staff (including Duell and Arksey) justified the transfer by falsely stating that Plaintiff quit his job and would not report to work on assigned days.

In May 2012, Plaintiff wrote a letter to the ICF Classification Director, asking for an updated work evaluation. He never received a response, so he filed a grievance about the issue in June 2012. The grievance was rejected as untimely. Plaintiff's appeals of this decision were denied. Plaintiff also wrote letters to Inspector Goodsen seeking her assistance, but she did not respond. Plaintiff filed a grievance about Goodsen on June 7, 2012, which was rejected by Defendant Breedlove. Plaintiff also filed a grievance regarding the destruction of his personal property which was also denied.

Plaintiff alleged that (1) he was transferred to another prison in retaliation for his protected conduct, (2) MSI supervisors harassed and discriminated against him in violation of the Equal

Protection Clause; (3) the rejection of his grievances prevented him exercising his right to seek redress of grievances; and (4) the denial of his grievances violated his rights under the Privacy Act. Plaintiff's claims have all been dismissed save his claim against Defendant Duell that he was transferred to the Chippewa Correctional Facility for improper retaliatory reasons. Defendant Duell now moves for summary judgment.

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Plaintiff alleges that Defendant Duell secured his transfer in retaliation for engaging in protected conduct. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendant asserts that he is entitled to relief because Plaintiff's transfer to another MDOC facility was not sufficiently adverse to sustain a First Amendment retaliation claim. The Court agrees.

In the context of a First Amendment retaliation claim, a prisoner is "expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted). Generally speaking, a transfer of a prisoner from one facility to another "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir., Apr. 28, 2011) (citation omitted). The Sixth Circuit has recognized an exception to this general rule "for cases in which foreseeable, negative consequences 'inextricably follow' from the transfer" such as an impairment of the prisoner's ability to access the courts. *Id.* (citation omitted). However, a transfer to "a less desirable prison which was more restrictive" or which places the prisoner "further away from his family" is not sufficiently adverse to maintain a retaliation claim. *See, e.g., Espree v. Burt*, 2016 WL 820943 at *4 (W.D. Mich., Feb. 12, 2016) (citations omitted); *see also, Henley v. Miller*, No. 13-1501 (6th Cir., Mar. 27, 2014) (in rejecting

a prisoner's retaliation claim, the court observed that "Henley's claims that his transfer has resulted in a hindered ability to call family and friends, an inability to continue his education, less money for discretionary spending, and uncomfortable sleeping arrangements, even if true, do not constitute 'foreseeable consequences that inhibited [his] ability to access the courts'"); *Hudson v. Wade*, No. 12-2465 (6th Cir., Mar. 5, 2014) (in rejecting a prisoner's retaliation claim, the court observed that transfer to a facility "with 'less law library access,' [which] 'houses mentally ill prisoners,' has a 'documented racist history,' requires prisoners to make telephone calls outside in cold weather, has a policy of elevating 'minor rule violations' to 'major misconduct reports,' hinders his ability to visit his family because of its location, and does not offer the same education programs. . .[constitutes] the *de minimis* discomforts 'that prisoners are expected to endure'").

Plaintiff conceded at his deposition that his transfer did not impair or interfere with his ability to pursue any litigation or other court-related activities. (ECF No. 65-2 at PageID.503). While Plaintiff argues that his transfer made it more difficult for his friends and family to visit him, such is insufficient to maintain a First Amendment retaliation claim. In sum, while the Court is not unsympathetic to the impact of being transferred to a different correctional facility, there is no evidence that Plaintiff's transfer resulted in the type of consequences sufficient to maintain a claim of retaliation. Accordingly, the undersigned recommends that Defendant's motion for summary judgment be granted.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (ECF No. 64), be **granted** and this matter terminated. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  March 31, 2017                             /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge